**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **ERIC JOSEPH REMEROWSKI,** | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **A-05-CV-919-SS** |
| | § | |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Dept. of** | § | |
| **Criminal Justice-Correctional** | § | |
| **Institutions Division,** | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE SAM SPARKS
       UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus under 28 U.S.C. § 2254 (Document 1); Petitioner's Memorandum in Support of Petition (Document 2); and Respondent's Answer (Document 8). Petitioner, represented by counsel, has paid the filing fee for his application. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

**A.     Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 26th Judicial District Court, Williamson County, Texas, in cause number 01-852-K26, styled *The State of Texas v. Eric Joseph Remerowski, aka Eric Ritchie. Ex parte Remerowski*, Appl. No. 62,255-01 at 86-88.  Petitioner was charged with the felony offense of aggravated robbery. *Id.*  Petitioner pleaded guilty to the charge and elected for a jury to assess punishment. *Id.* at 75.  On April 18, 2002, after both sides presented evidence on punishment, the jury returned an instructed verdict of guilty and sentenced Petitioner to 50 years imprisonment. *Id.* at 82.

The Third Court of Appeals of Texas affirmed Petitioner's conviction on May 30, 2003. *Remerowski v. State*, No. 03-02-00317-CR, 2003 WL 21241330 (Tex. App.–Austin 2003, pet. ref'd).  The Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review on January 14, 2004. *Remerowski v. State*, P.D.R. No. 1276-03.  On December 21, 2004, with the assistance of counsel, Petitioner filed a state application for writ of habeas corpus challenging his conviction. *Ex parte Remerowski*, Appl. No. 62,255-01 at 2.  The Texas Court of Criminal Appeals denied Petitioner's application without written order on the findings of the trial court without a hearing on August 17, 2005. *Id.*  Petitioner filed his federal application by counsel on October 18, 2005.

**B.     Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated

below.

In February 2001, Petitioner placed a classified advertisement in the Austin newspaper offering a Toyota Camry for sale.  One of the persons who responded to the ad was Zulfiquar Ali.  After a series of telephone conversations with Petitioner, who was using an alias, Ali agreed to pay $8000 cash for the car.  It was agreed that Petitioner would meet Ali in a convenience store parking lot to consummate the sale.

At the agreed time, Ali drove to the convenience store in his van, accompanied by his wife and two children.  Petitioner was waiting in the parking lot and told Ali that his wife would soon arrive in the Camry.  Petitioner was allowed to enter the Alis' van and asked to see the money.  After counting the $8000, Petitioner took a pistol from his pocket, pointed it at the Alis, and told them he was taking the money.  He then exited the van, ran to a car parked nearby, and drove away.

Two months later, Petitioner told a neighbor about this crime and said that if the complainants had resisted "he would have had to just shoot them."  The neighbor reported appellant to the police.  During a subsequent search of Petitioner's residence, police found: a .38 caliber pistol from which the serial number had been removed; bullets; several stolen automobile license plates; handcuffs; a can of chemical mace; a "bail enforcement officer badge;" a stun gun; sunglasses with the lenses blacked out as if to use for a mask; a packet referred to by an officer as a "restraint kit" consisting of flex cuffs, duct tape, and nylon rope; latex gloves; a ski mask; super glue and spirit gum, together with instructions on how to use them to prevent leaving fingerprints; shotgun shells taped together with "a remote control device" of the sort used to activate a car alarm; knives; a marihuana bong; a marihuana plant; and documents explaining how to steal information from the magnetic strip on credit cards, how to defeat burglar alarms, and how to forge checks.

Petitioner's former roommate testified that appellant forged checks on the roommate's bank account.  The roommate also testified that Petitioner told him he had killed a man in Chicago, blackmailed a woman with whom he had had an affair, and stolen valuable rugs.  Petitioner often told the roommate about his "grand idea" to kidnap someone for ransom.

Petitioner and other defense witnesses testified that he suffered from bipolar disorder.  This condition, which was aggravated by excessive alcohol and marihuana use, led appellant to create "fantasy worlds."  Petitioner wrote some of these fantasies in the form of stories and screen plays.  Others he simply told to friends and acquaintances

as if they were true. Petitioner explained that his stories about committing a murder and dealing in stolen rugs in Chicago were fantasy, as was his claim to have blackmailed a woman. Petitioner said that he planned and committed the robbery at a time when he had stopped taking his medications for the bipolar disorder and was drinking heavily.

*Remerowski v. State*, No. 03-02-00317-CR, 2003 WL 21241330, 1 (Tex. App.–Austin 2003, pet.

ref'd).

**C.    Petitioner's Grounds for Relief**

Petitioner argues that he received ineffective assistance of counsel at trial on thirteen separate bases with various subparts within those bases.

**D.    Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

<u>**DISCUSSION AND ANALYSIS**</u>

**A.    The Antiterrorism and Effective Death Penalty Act of 1996**

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"],[1] which radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254. Under the AEDPA's new standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[1] Pub.L. No. 104-132, 110 Stat. 1214 (1996).

4

Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court. *See id.*

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *See* 28 U.S.C. § 2254(e)(1). While the court presumes such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence. *See id.* Absent an unreasonable determination in light of the record, the court will give deference to the state court's fact findings. *See id.* § 2254(d)(2).

## B.    Ineffective Assistance of Counsel

Petitioner argues that he was denied effective assistance of counsel for numerous reasons. Petitioner alleges 13 points of error, including: failure to object to expert testimony concerning mental condition, failure to object to improper final argument, failure to obtain adverse ruling on

improper comments during final argument, failure to prepare defense witness for testimony, opening

door for extraneous matters, failure to file motion for new trial on disproportionate sentence, failure

to object to improper question of complainant, failure to object to extraneous matters, failure to

request proper instruction on extraneous matters, failure to request pretrial hearing on extraneous

matters, and failure to object to expert testimony that Petitioner's medical needs would be met in

prison.  Petitioner raised these same issues in his state application for writ of habeas corpus.  The

state courts rejected the merits of Petitioner's claim.  As such, the AEDPA limits the scope of this

Court's review to determining whether the adjudication of Petitioner's claim by the state court either

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States or (2) resulted in

a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.

     Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth

in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient.  This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.  Unless a defendant can make
> both showings, it cannot be said that the conviction or death sentence resulted from
> a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.  In deciding whether counsel's performance was deficient, the Court applies a standard

of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must

be highly deferential.  *Id.* at 686-689.  "A fair assessment of attorney performance requires that every

effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. *Id.* at 695-97. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687.

Where ineffective assistance of counsel is alleged during the punishment phase of a non-capital case, the petitioner must demonstrate that the sentence he received would have been "significantly less harsh" but for the deficient performance of his attorney. *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). Among the relevant factors the court must consider are: (1) the sentence imposed in the case; (2) the minimum and maximum sentence allowed by law; (3) the placement of the sentence within the allowable range; and (4) any mitigating or aggravating factors considered by

7

the trier of fact. *Spriggs*, 993 F.2d at 88-89.[2]  With these principles in mind, this Court must now turn to the issues raised by the pleadings in this cause.

> 1.    **Counsel's Failure to Object to the Testimony of Dr. Richard Coons that Petitioner Had a Defective Conscience and Therefore Could Not Be Rehabilitated, and Would Have His Medical Needs Met in Prison (Claims One and Thirteen)**

During his state trial, through his own testimony and that of his mother, Petitioner put on evidence that he suffered from bi-polar disorder.  3 SF 181, 232-33, 255-57.  In rebuttal, the State called Dr. Richard Coons, a psychiatrist.  Dr. Coons testified as follows:

> Q:    Give me your opinion on whether or not, based upon just what you've seen, you believe he has a bipolar disorder.
>
> A:    He probably does.
>
> Q:    Okay.  And when you evaluate someone with bipolar disorder, are there degrees?
>
> A:    Yes.  You mean intensity?
>
> Q:    Yes.
>
> A:    Oh yeah.  You could have – you can have mild depressions and mild hypomanic episodes, or you can have more intense problems.
>
> Q:    Based upon what you have heard here, do you have an opinion about what level of intensity of disorder Eric Remerowski has?

---

[2]  In *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004), the Fifth Circuit abrogated the "significantly less harsh" test for ineffective assistance of counsel claims arising under the federal sentencing guidelines. *Id.* at 438. *See also Glover v. United States*, 531 U.S. 198, 203, 121 S. Ct. 696, 700 (2001) (holding that "any amount of actual jail time has Sixth Amendment significance"). However, the court noted an important distinction between the federal guidelines and state sentencing regimes.  Because state sentencing tends to be more discretionary than the more predictable federal system, "practically any error committed by counsel could [result] in a harsher sentence." *Grammas*, 376 F.3d at 438 n. 4 (quoting *Spriggs*, 993 F.2d at 88). Therefore, the court limited its adoption of the "any amount of jail time" test to cases involving the federal guidelines. *Id.*

A:     Yes.  It has varied.   Apparently there are times when he's been completely asymptomatic.  There's times when he was significantly depressed and even thinking about suicide.  But it seems to me from what I've seen and heard and what the other doctors have had to say about it he has hypomanic episodes as opposed to full manic episodes.  And those are – that's the less intense variety.

Q:     And as a forensic psychiatrist, do you have an opinion about whether or not that has affected his conscience?

A:     I don't think it affects his conscience.  It can give him some energy and intensity.  But I don't think it affects his conscience.

Q:     Have you –

A:     I mean he would know whether something was right or wrong whether or not he has – whether he's enthusiastic or intense.

Q:     Now, I summarized for you the testimony of his mother.  You heard the testimony of his father.  You heard his testimony so far.  Is there anything in his childhood, in his raising, that you found to be atypical that we should all blame for his having committed a robbery of a family?

A:     Oh, no.

Q:     Is there anything in any of that that you found would have triggered some unusual need to put a gun in somebody's face and take $8,000?

A:     No.

Q:     Did you form an opinion about the type of conscience that Eric Remerowski has?

A:     Well, it certainly allowed him to do that.  So it didn't – it didn't afford him the ability or the – it didn't allow him to control his behavior through conscience.

Q:     Well, when you look at whether someone did or did not control his behavior, are there different degrees of losing control?

A:     Yes.

Q:     Okay. Let me give you a – and could you – does some of that depend on whether they planned the incident?

A:     Oh, yes.

9

Q:     All right.  Well, let me give you a set of facts.  What if Eric Remerowski, in fact, decided he was going to rob somebody, took the time to buy an ad, placed the ad into the newspaper, wait for a phone call to come, phone-called back, set up a place to meet that person, get the gun, put on the suit, go over and wait at the Exxon for several minutes for the other person to arrive, when they arrive, go over to the van, talk to them in a quiet voice, talk them into getting them [sic] into your van where there are two children and a wife, and then pulling out his gun and taking $8,000 in cash, jumping out of that van, running across a parking lot to a parked car where he was going to escape and escaping down the road?   Would that strike you as information that would help you in forming an opinion about the degree of defective conscience that somebody might have?

A:     Yes.  That would suggest a significant defective conscience.

Q:     And is that in any way related to a bipolar disorder?

A:     No.

Q:     Now, if that same person was also alleged to have forged some checks and to do that they would have had to have taken the checks from a book and not just taken them from the front of the book but taken from interior places where someone might not immediately realize that they are gone and later forge those checks and perhaps also have a sexual relationship with a married woman and threaten to blackmail her so they could get some money and also brag about running somebody's head into a piece of concrete and killing them and also during the course of a massage sexually assault somebody, steal some rugs, use marijuana, take marijuana in bricks as payment for work, lie to an employer, does that combination of behavior help you in forming an opinion about how defective someone's conscience is?

A:     Yes.

Q:     What opinion would you have if that were all true?

A:     All of those things.  I mean they are all acts that society looks down on.  They don't want this kind of stuff going on.  So if a person is out there doing that, then you have to say they their conscience allowed them to do that.  And not only did it allow them to – you know, everybody can make a mistake or maybe two. But when it comes to a pattern of disregarding what the law is and disregarding other people's rights, then it speaks more and more strongly toward a defective conscience.

Q:     Well, now you heard Eric Remerowski own up to all this and speak rather smoothly of all these things.  Does that influence you at all into believing that he's turned everything around?

10

> A:    No. No. I mean the conscience is something that's – that's formed during a long period of your life.  And when you get to be his age, your conscience is pretty well what you've got.

3 SF 266-270.

Dr. Coons also testified that Petitioner would have his medical needs met in prison. He testified that:

> Q:    So can they treat this bipolar disorder if you happen to be in prison? Or are you just locked up in a cell?
>
> A:    Oh, no. They treat – I mean there are a number of people in the penitentiary with bipolar disorder and virtually every other mental disorder.
>
> Q:    And the law – and, of course, if the law didn't do I, require that fair treatment, doesn't it? (sic)
>
> A:    Yes.
>
> Q:    So if we sent someone off for 50 years to prison, the fair assumption is that they are nonetheless going to get their medical needs treated?
>
> A:     Yes, they will be treated.

3 SF 273-274.

Petitioner argues that trial counsel was ineffective when he failed to object to Dr. Coons' testimony pursuant to Texas Rules of Evidence 702 and 403, which he claims would have rendered that testimony inadmissible.  Texas Rule of Evidence 702 provides: "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702.  Rule 403 of the Texas Rules of Evidence also provides that relevant evidence may be excluded if its probative value does not outweigh its prejudicial impact.  TEX. R. EVID. 403.

On state habeas review the trial court considered the affidavit of Petitioner's counsel at trial, Russell D. Hunt, Jr. In that affidavit Hunt stated, "the testimony regarding Applicant's conscience is remarkably consistent with information I had received from Applicant's own psychiatrist prior to trial. I certainly believe that this information was relevant in the punishment phase of trial and I did not want to object to the testimony when it likely would have been admitted over my objection. Instead I chose to lessen the effect of the testimony by other means." *Ex parte Remerowski*, Appl. No. 62,255-01 at 37. Hunt also stated that he was very familiar with Dr. Coons and was sure that he would have come up with a full explanation of TDCJ-ID's medical facilities and how well they would have treated Petitioner. *Id.*

The state habeas court applied *Strickland* and found that Petitioner's counsel was not deficient as Dr. Coon's testimony was relevant, reliable, and admissible. *Id.* at 60. Specifically, the court found Dr. Coons' testimony on Petitioner's defective conscience was admissible as it directly rebutted Petitioners' assertion on direct examination that he committed the crime of aggravated robbery because of his bipolar disorder. *Id.* Additionally, the court found that even if Hunt had challenged the admissibility of Coons' testimony, Petitioner failed to meet his burden and show that Coons' testimony as an expert witness failed to meet the requirements of Texas Rule of Evidence 702. *Id.* Finally, the court found Hunt was not deficient in failing to object to questions by the State of Dr. Coons concerning whether Petitioner's psychiatric needs as an individual with bipolar disorder could be met in prison. *Id.* at 63. The state court explained Hunt stated a reasonable strategy for not objecting, because Hunt believed, if challenged, Dr. Coons' testimony on that issue would have been reinforced with additional testimony and would have thus carried greater weight in the eyes of the

12

jury. *Id* The Court of Criminal Appeals denied Petitioner's application for writ of habeas corpus without written order on the findings of the trial court without a hearing. *Id.* at cover.

Petitioner cites to various cases in support of his argument that Dr. Coons' testimony was inadmissible. However, these cases are distinguishable from the case at hand. In *Speer v. State*, 890 S.W.2d 87 (Tex. App. – Houston [1st Dist] 1994, pet. ref'd), the court merely found that the exclusion of testimony by an expert about information known to a lay person was not error. In *Williams v. State*, 850 S.W.2d 784 (Tex. App. – Houston [14th Dist.] 1993), *aff'd* 895 S.W.2d 363 (Tex. Crim. App. 1994), the court also found that exclusion of expert testimony that defendant was not the type of person who would place obscene and threatening phone calls was not in error as it was character testimony. In *Williams v. State*, 649 S.W.2d 693 (Tex. App. –  Beaumont 1983, no pet.), that court found that a psychologist's opinion that a defendant did not possess the state of mind to commit a crime was inadmissible character evidence. In *Dean v. State*, 636 S.W.2d 8 (Tex. App. – Corpus Christi 1982, no pet.), the court rejected the defendant's argument that the trial court erred in refusing to admit into evidence expert opinion concerning defendant's inclination to engage in deviate sexual behavior.

Those cases are distinguishable from this case both because the character evidence was presented at the guilt/innocence phase of the trial and because in those cases the defendants attempted to use expert testimony to introduce into the record inadmissible character evidence. In Texas, a defendant may introduce evidence of his character at the guilt phase of a trial. *Schmidt v. State*, 449 S.W.2d 39, 40 (Tex. Crim. App. 1970). However, unless the State opens the door to other inquiries, *Wallace v. State*, 501 S.W.2d 883, 886 (Tex. Crim. App. 1973), that evidence is limited to the witness' opinion of the defendant's reputation for being a peaceable and law abiding citizen,

*Id.* at 886, *Schmidt*, 449 S.W.2d at 40.  The defendant is not permitted to prove his character traits by evidence of personal opinion or specific acts.  *Ward v. State*, 591 S.W.2d 810, 817-818 (Tex. Crim. App. 1979).  In none of these cases did the State open the door to the evidence in issue.

Petitioner also relied upon *Holloway v. State*, 613 S.W.2d 497 (Tex. Crim. App. 1981), which is also distinguishable, but on another basis.  In that case, the court found that an expert's opinion "is without value, and is inadmissible, if based upon facts and circumstances gleaned by him from ex-parte statements of third persons, and not established by legal evidence before a jury trying the ultimate issue( ) to which the opinion relates."  In this case, Dr. Coons' testimony was specifically based upon testimony at trial.  Lastly, in this case, Dr. Coons' testimony was offered in rebuttal to explain Petitioner's bi-polar disorder (which had been offered as mitigating evidence), and how that may have affected Petitioner's behavior.  As such his testimony was admissible and relevant.  Similarly, Hunt, a specialist in criminal law, was well-acquainted with Dr. Coons' experience and background, which led him to reasonably believe a challenge regarding the medical care Petitioner could receive in prison would be to his client's detriment.  Accordingly, the state court's determination that counsel was not deficient with regard to Dr. Coons' testimony was not unreasonable.

**2.      Counsel's Failure to Object to Various Improper Final Arguments by the Prosecutor or to Obtain Adverse Rulings (Claims Two and Three)**

In Claim Two, Petitioner argues that he was denied effective assistance of counsel when counsel failed to object to the prosecution's improper arguments including: a) the prosecution's incorrect explanation of the burden of proof for the consideration of extraneous offenses by not mentioning the requirement of proof beyond a reasonable doubt; b) the prosecutor's argument that

14

punishment should be assessed based upon the crimes committed; and c) the prosecutor's improper reference to the parole charge during the punishment phase.  In his Third Claim, Petitioner also argues that he was denied effective assistance of counsel when counsel failed to request a motion to disregard or a mistrial on the following comments the prosecutor made during final argument: a) the implication that Petitioner had or would kill someone when that implication was unsupported by the evidence;  b) the improper characterization of shotgun shells as a bomb;  c) inflammatory reference to the September 11th attacks;  and d)  comments that Petitioner is a racist.

Under both federal and Texas law, proper closing argument by the prosecution in criminal trials fall into four general areas:  (1) summation of the evidence; (2)  reasonable deduction from the evidence;  (3) answer to argument of opposing counsel; and  (4) pleas for law enforcement.  *See Buxton v. Collins,* 925 F.2d 816, 825 (5th Cir.), *cert. denied,* 498 U.S. 1128 (1991) (recognizing that the four proper areas for prosecutorial jury argument are summation of the evidence, reasonable inference from the evidence, answers to opposing counsel's argument, and pleas for law enforcement); *Westbrook v. State,* 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 944 (2001) (holding that Texas law recognizes as legitimate and appropriate the same four types of prosecutorial jury argument).

Petitioner's first claim is that counsel was deficient for failing to object when the prosecution stated in its closing argument that the phrase "extraneous crimes or bad act" referred to "anything we proved up during the course of our evidence or anything that Remerowski admitted to on the witness stand." Petitioner claims that counsel should have objected because that statement misstated the law as it failed to mention the standard of proof for those acts as "beyond a reasonable doubt."

15

However, the record shows that the jury charge properly explained the standard. TR 162-63, and the record does not reflect that the State contradicted that standard.  Thus, the court's instructions properly stated the law.

Petitioner also complains that his counsel failed to object to the prosecutor's argument that punishment should be assessed based upon the "crimes" committed because it invited the jury to speculate on unproven allegations.  Petitioner relies upon *Everett v. State*, 707 S.W.2d 638, 640 (Tex. Crim. App. 1986), in support.  That case stands for the proposition that the prosecution may not imply prior misconduct by the accused or inject matters not in the record into the jury argument. However, the state district court, upon whose opinion the Court of Criminal Appeals relied without written order, found that the prosecution had introduced evidence at trial that Petitioner had committed the offenses of stealing checks, forging checks, stealing license plates, removing a serial number from a firearm, and smoking marijuana.  *Ex parte Remerowski*, Appl. No. 62,255-01 at 4. The district court concluded that Petitioner's counsel was not deficient for failing to object to these arguments because the prosecution offered a great deal of evidence regarding Petitioner's extraneous crimes and bad acts.  *Id.* at 61.  Additionally, the court noted its charge to the jury instructed that before the jury could consider evidence of any extraneous offense or bad act, it must be established beyond a reasonable doubt that Petitioner had committed that act or offense.  *Id.* Because of this instruction,  the district court concluded that Hunt offered a reasonable strategy for not objecting to the comments about other "crimes" and that his performance was not deficient.  *Id.*  The trial transcript supports the court's findings and conclusions.

Petitioner also asserts that Hunt was deficient for failing to object to the prosecution's "clearly improper reference to parole during the final argument."  Petitioner's Brief at p. 14.  The

prosecution stated "basically, whatever sentence you give this defendant, he's going to have to serve half of that before he's eligible for parole."  3 SF 136.

Article 37.07, Section 4(a) of the Texas Code of Criminal Procedure requires the trial court in a trial involving a 3g offense or a deadly weapon finding, to charge the jury as follows:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. . . .  Eligibility for parole does not guarantee that parole will be granted.
>
> * * * *
>
> You may consider the existence of the parole law and good conduct time.  However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant.  You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX. CODE CRIM. PROC. ANN. art. 37.07 § 4(a) (Vernon 2002).  Consequently, it is improper for a prosecutor to apply the law to the defendant on trial during jury argument.  *Perez v. State*, 994 S.W.2d 233, 236-37 (Tex. App.-Waco 1999, no pet.).  However, it is acceptable to quote or paraphrase the court's charge to the jury.  *Id.* at 237 (citing *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990)).  This includes explaining or paraphrasing the parole law found in the charge. *Id.*

The state court, upon which the Court of Criminal Appeals relied, found that Petitioner's counsel's failure to object to the prosecution's remarks was not deficient as the remarks were proper and the charge contained an accurate description of parole law.  *Ex parte Remerowski*, Appl. No. 62,255-01 at 61.  In this case, the court's charge to the jury followed Article 37.07, Section 4. *See* TR 163-64.  Furthermore, the prosecutor's statement was not detrimental to Petitioner.

In his third claim, Petitioner also argues that he was denied effective assistance of counsel when counsel failed to request an instruction to disregard or for a mistrial when the prosecution implied that Petitioner had or would kill someone in the future, despite no evidence supporting this, 4 SF 160; improperly characterized shotgun shells as a bomb, 4 SF 166; referred to the September 11th attacks for inflammatory purposes, 4 SF 172; and made comments that Petitioner is a racist, 4 SF 174.   Petitioner argues that the failure to obtain an adverse ruling on these issues failed to preserve them for appellate review and thus constituted ineffective assistance.

The state habeas court found:

> Hunt did not move for a mistrial related to any of the foregoing comments made by the State during closing argument, because he did not believe that any of the statements were sufficiently egregious to result in mistrial.

*Ex parte Remerowski*,  Appl. No. 62,255-01 at 61. The state court concluded:

> None of the comments made by the State during closing arguments were improper. Each of the comments were supported by the evidence admitted during trial.  The State's comments on those topics were proper summations of the evidence or were reasonable deductions from the evidence.

*Id.* at 61.

The record shows that counsel objected to each of these statements and in one case the statement was withdrawn.  The record also reflects that Petitioner's counsel reported that he did not move for a mistrial on these issues because he did not believe they were sufficiently egregious to result in a mistrial.

An independent review of the testimony at trial shows that Petitioner's former roommate Adrian Stewart testified that Petitioner had told him that he killed a person in Chicago and that he had plans for kidnapping another person for money.  3 SF 129-130.  Additionally, admitted into

evidence were various items that were recovered from Petitioner's car and apartment after they were searched.  These items included a semiautomatic gun, bullets, gun magazines, various license plates including paper dealer plates and a stolen metal plate, hand cuffs, mace, a stun gun, a ski mask, sunglasses with the inside blacked out with tape or paint, flex restraints, nylon rope, a rubber glove, super glue, and documents explaining how to immobilize cattle.  3 SF 60-88.  The statements to which Petitioner objects are rational inferences gathered from the evidence presented to the jury.

With regard to the prosecutor's comments characterizing shotgun shells found in Petitioner's apartment as a bomb, the record shows that James Nielson, a bomb technician with the Austin Police Department, testified that they were unable to determine if the item located in Petitioner's apartment was or was not a bomb.  He testified that upon x-ray, the device contained explosive filler and electronic components including an LED and a power source, and that it was wrapped in black shrink wrap plastic.  3 SF 144.  He then testified that the bomb squad took the device to a quarry and rendered it safe.  3 SF 146-47.  Again, the statement to which Petitioner objects is a rational inference gathered from the evidence presented to the jury.

The third prosecution remark of which Petitioner complains is the statement:"Those Middle Easterns, boy, they were ripping people off.  They were stealing those rugs.  There is a real racist streak running through this trial." 4 SF 174.  At trial, Petitioner testified that "there were a lot of people from the Middle East that would come with the rugs . . . and they were all kind of shady looking." 4 SF 11.  Also, Petitioner's victims were of Middle Eastern descent and he complained that he was mistreated by minority prisoners while incarcerated in Williamson County.  Counsel's statement was a reasonable inference from the evidence.

The fourth prosecutorial reference challenged by Petitioner is the reference to the September 11th attacks. The record reveals counsel objected to the comment and the comment was withdrawn. 4 SF 172. Petitioner has failed to show counsel's performance was deficient for not moving for a mistrial on this tenuous basis.

Petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts. The Court finds that the state courts' decision is not contrary to and does not involve an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

3.    **Counsel's Failure to Properly Prepare Defense Witness Terry Pechota for Testimony and Counsel's Questioning of Pechota that "Opened the Door" to Damaging Have You Heard Questions on Cross Examination (Claims Four and Five)**

Petitioner's trial counsel called Petitioner's stepfather Terry Pechota to testify on his behalf. Pechota is a former United States Attorney for South Dakota, practiced law since 1972, and lived with Petitioner as a child. Pechota testified as to Petitioner's character, what a nice child he was, that he was never an evil person, how he cared for his younger brothers, cared for an injured owl he found, and how artistic and creative he was. 3 SF 208-212. Pechota testified that Petitioner could become a contributing member of society. On cross-examination, the prosecution asked Pechota whether he had heard allegations that Petitioner had pressed his erect penis against a client during a massage, had sexual intercourse with massage clients, smoked marijuana, possessed a marijuana plant in his apartment when arrested, that he stole checks from a roommate and forged them, had an affair with a woman and blackmailed her, stole license plates, and possessed a gun, stun gun, handcuffs, a ski mask, mace, and bindings. Pechota responded that he had not heard this

information, was surprised by it, but that he would not change his opinion that Petitioner has never

hurt anybody.  3 SF 225-228.

In his affidavit submitted in support of the State's Answer to Application for Writ of Habeas

Corpus, counsel stated:

> The memorandum in grounds 5 and 6 argues that I was ineffective in my preparation
> and questioning of defense witness Terry Pechota.  In preparing Terry, I told him the
> general categories of questions I would ask him.  Because Terry was a witness whose
> purpose was to establish that Applicant was a decent kid and not a budding criminal
> mastermind or sociopath, I certainly knew that his testimony might open the door to
> damaging "did you know" or "have you heard" questions.  However, these questions
> are not primary evidence of the truth of the contents of the questions anyway.  Given
> that Terry is a former United States Attorney who prosecuted criminal matters, I
> imagine that he knew that as well.  In any case, there are certain risks from having a
> good character witness like Terry testify, but in this particular case it was absolutely
> imperative to have some good character testimony.  I firmly believe that the benefits
> of his testimony far outweighed the potential drawbacks the testimony could bring.

*Ex parte Remerowski*,  Appl. No. 62,255-01 at 37.  Upon habeas review the state appellate court

adopted the findings of the state district court.  The district court found that Hunt's preparation of

Pechota was reasonable in light of his status as an attorney.  *Id.* at 61.  The district court also found

that Hunt was not deficient in calling Pechota to testify as a character witness, as Hunt believed that

the potential benefits outweighed the risks of negative character evidence being introduced at trial,

which was a reasonable strategy.  *Id.  Strickland* and its progeny make clear that counsel's strategic

choices will not be second-guessed by post-hoc determinations that a different trial strategy would

have fared better.  466 U.S. at 689.  The Court finds Petitioner has not shown that the adjudication

of Petitioner's claim by the state court (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law; or (2) resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

### 4.    Failure of Counsel to File a Motion for New Trial (Claim Six)

Petitioner next claims that counsel was deficient for failing to file a motion for new trial that made a proper record concerning the disproportionality of his 50-year sentence under the Eighth Amendment to the United States Constitution.[3]  In support of his argument Petitioner lists numerous cases in which defendants received sentences of less than 50 years for aggravated robbery throughout the state.

Neither the Supreme Court nor the Fifth Circuit has yet determined whether the right to counsel attaches on a motion for new trial.  *Graves v. Cockrell*, 351 F.3d 143, 155 (5th Cir. 2003); *Mayo v. Cockrell*, 287 F.3d 336, 339 - 40 & n. 3 (5th Cir. 2002) (having counsel during motion for new trial phase may or may not be necessary to preserve defendant's rights to fair trial and effective appeal).  For this reason alone, Petitioner cannot show the state habeas court's denial of this claim was improper.  Because the law in this area is not established, Petitioner cannot show a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law.

Moreover, the state court specifically found that Petitioner's sentence was appropriate given the violent nature of the offense and the other punishment evidence.  *Ex parte Remerowski*, Appl. No. 62,255-01 at 62. The state court's finding is supported by several cases involving Williamson County convictions.  In *Collum v. State*, 96 S.W.3d 361 (Tex. App. – Austin, 2002, no pet.), the Williamson County defendant received 50 years for aggravated robbery).  After pleading guilty,

---

[3]Petitioner was not represented by Russell Hunt, but by other counsel, at this juncture in the proceedings.

another defendant in Williamson County was sentenced to 40 years for aggravated robbery in *Pearson v. State*, No. 03-01-00347-CR, 2001 WL 893340 (Tex. App. – Austin, 2001, no pet.).  In *Torres v. State*, No. 03-00-00112-CR, 2000 WL 1227673 (Tex. App. – Austin, 2000, no pet.), the Williamson County defendant was sentenced to 55 years for aggravated robbery.  In another Williamson County case, the defendant was sentenced to 60 years for aggravated robbery.  *Sanders v. State*, 1 S.W.3d 885 (Tex. App. – Austin, 1999, no pet.).  Petitioner has not shown that counsel was deficient in failing to pursue his alleged disproportionate sentence in a motion for new trial.

### 5.    Failure of Counsel to Object to the Prosecutor Questioning the Victim About How Petitioner's Punishment Would Effect His Fear Level (Claim Seven)

Petitioner next complains that his trial counsel was ineffective for failing to object to the prosecutor asking the robbery victim, Zulfiquar Ali, the following question at trial "Would it make you feel any better if you knew he was being supervised by a court order?  I mean would that change your fear in any way?"  2 SF 201.

The trial court, on state habeas found that:

> Hunt was not deficient for failing to object to the State's question of the complainant concerning the potential impact on [Ali's] fear level of a probated sentence in Remerowski's case. Hunt believed that Ali's answer to the question was obvious and that objecting to the question would only serve to highlight the witness' response. Hunt has stated a reasonable strategy for not objecting.

*Ex parte Remerowski*, Appl. No. 62,255-01 at 62.

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."  *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). In addition, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective

assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (citations omitted).  Even if an objection would have been upheld by the trial court and Mr. Ali would have been prevented from answering, Petitioner has failed to show that the comment infected the entire trial with unfairness. Additionally, Petitioner has failed to show that, upon habeas review, the state court improperly applied the *Strickland* standard or its decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### 6.    Failure of Counsel to Object to Witness Testimony Recounting Other Crimes Committed or Planned by Petitioner (Claim Eight)

Petitioner argues that counsel was deficient when he failed to object to testimony from witnesses who recounted other crimes or planned crimes that Petitioner had allegedly committed when there was no evidence supporting the commission of these crimes.  Specifically, the testimony was that Petitioner told witnesses at various times that he had blackmailed a woman with whom he had a sexual encounter, stolen rugs, killed a man, and had a plan to kidnap someone.  Upon habeas review, the state court found that counsel was not deficient for failing to object to this testimony as Petitioner's out-of-court admissions were both relevant and admissible.

Article 37.07, Section 3(a), of the Texas Code of Criminal Procedure addresses the quantum of proof that is necessary for admission of an extraneous crime or bad act during the punishment phase of a criminal trial.  That section provides:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and notwithstanding rules 404 and 405, Texas Rules of Criminal Evidence, any other

24

evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, §3(a).  The Court of Criminal Appeals has defined an extraneous offense as "any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers." *Rankin v. State*, 953 S.W.2d 740 (Tex. Crim. App. 1996) (emphasis omitted).  By allowing the State to present evidence about extraneous crimes or bad acts jurors learn "as much useful information as possible in deciding the appropriate punishment for the individual defendant." *Mendiola v. State*, 924 S.W.2d 157, 163 (Tex. App. – Corpus Christi 1995, no pet.).  For example, in *Cox v. State*, the Fort Worth Court of Appeals held that evidence presented during the punishment phase of an aggravated robbery trial, which showed that the defendant had once followed a woman home in the middle of the night, gone to her door, and turned her front door knob, was admissible as a "bad act" committed by the defendant. 931 S.W.2d 349, 356-57 (Tex. App. – Fort Worth 1996, pet. granted).  The trial court has broad discretion in determining the admissibility of evidence presented at the punishment phase of trial.  *Henderson v. State*, 29 S.W.3d 616, 626 (Tex. App. – Houston [1st Dist.] 2000, pet. ref'd). However, even if a fact is found to be relevant to the determination of a defendant's sentence, it may still be excluded on grounds that "its probative value is substantially outweighed by the danger of unfair prejudice."  *Ward v. Dretke*, 420 F.3d 479, 493 (5th Cir. 2005) (quoting TEX. R. EVID. 403).

The claim that Petitioner blackmailed a woman with whom he had sexual relations appears irrelevant to Petitioner's crime of aggravated robbery.  Despite the state court's findings and conclusions, counsel could have made a valid objection to this evidence pursuant to *Ward*.  The other extraneous offenses or bad acts to which Petitioner objects are relevant to his alleged criminal

scheme.  The probability that such evidence would have been excluded because of unfair prejudice is low.

>**7.**    **Failure of Counsel to Request an Instruction to the Jury that Certain Alleged Crimes that Petitioner Told State Witnesses About Were Not Proven Beyond a Reasonable Doubt and Should Not Be Considered (Claim Nine)**

Petitioner next claims that counsel was deficient for failing to obtain a jury instruction to disregard all crimes that Petitioner admitted to other people because those crimes were not proven beyond a reasonable doubt.  The habeas court found that Hunt was not deficient for failing to request this instruction from the trial court.  The court stated:

>The trial court instructed the jury in writing at the close of evidence that it could not consider evidence related to an extraneous offense or bad act unless it believed beyond a reasonable doubt that applicant had committed such an offense or bad act. Hunt has stated a reasonable strategy for not objecting.

*Ex parte Remerowski,* Appl. No. 62,255-01 at 62. Because the court's charge included an instruction that the jury could not consider the evidence related to extraneous offenses or bad acts unless they believed beyond a reasonable doubt that Petitioner committed the offense or bad acts, counsel was not deficient in failing to request an additional instruction.

>**8.**    **Failure of Counsel to Request a Pretrial Hearing In Order to Make a Pretrial Determination of the Admissibility of Various Alleged Extraneous Crimes (Claim Ten)**

Petitioner argues that counsel was deficient for failing to request a pretrial hearing on the admissibility of various extraneous allegedly planned or committed crimes because there was no proof these alleged crimes occurred and therefore, Petitioner argues, the trial court should have excluded testimony about them from evidence.  Upon habeas review the trial court found:

>Hunt was not deficient in failing to request a pretrial hearing upon the admissibility of evidence related to applicant's extraneous crimes and bad acts.  Hunt was aware through pretrial discovery of the crimes and bad acts the State intended to prove on

the issue of applicant's punishment.  Hunt was also aware of the evidence upon which the State intended to rely to prove that applicant had committed those offenses and acts.

*Ex Parte Remerowski* Appl. No. 62,255-01 at 63.  Petitioner relies upon *Harrell v. State*, 884 S.W.2d 154 (Tex. Crim. App. 1994), in support of his argument.  That case, however holds that "in deciding whether to admit extraneous offense evidence in the guilt/innocence phase of trial, the trial court must, under Rule 104(b), make an initial determination at the proffer of the evidence, that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." *Id.*  In this case Petitioner pleaded guilty and proceeded to the punishment phase of trial.  Accordingly, Rule 104 is not implicated, and Petitioner has not shown that the trial court's determination was unreasonable.

### 9.    Failure of Counsel to Object to Testimony that Petitioner Told Others He Had an Affair With a Woman (Claim Eleven)

Petitioner argues that counsel was deficient for failing to object to testimony by a witnesses that Petitioner had told him he had an affair with a woman because this evidence was not proven beyond a reasonable doubt and was not admissible pursuant to Rule 403 of the Texas Rules of Evidence.  Petitioner's former roommate, Adrian Stewart testified that Petitioner told him that he had sexual relations with a married woman.  3 SF 128-30.  Upon habeas review, the trial court found that:

> Hunt was not deficient in failing to object to witness testimony concerning applicant's admission that he had a sexual affair with a woman who was not his spouse.  Such evidence was admissible as an extraneous bad act under article 37.07 of the Texas Code of Criminal Procedure.  Hunt has stated a reasonable strategy for not objecting.

*Ex Parte Remerowski*, Appl. No. 62,255-01 at 63;  *see also Id*. at 61.  In his affidavit, Hunt also stated that in his opinion, the evidence relating to Petitioner's affair with a married woman was not

27

only admissible, but minimally prejudicial.  As mentioned above, the Court fails to see the relevance in whether Petitioner had an affair with a married woman.  However, as explained below, Petitioner has failed to demonstrate he was prejudiced by counsel's failure to object to this evidence.

**10.   Failure of Counsel to Object to Testimony Concerning Items Found in Petitioner's Home (Claim Twelve)**

Petitioner argues that counsel was deficient for failing to object to testimony concerning items found in his home that the prosecution claimed were criminal instruments because this testimony was not admissible pursuant to Rule 403 and there was no proof beyond a reasonable doubt that these items were in Petitioner's possession for any illegal purpose.

At trial the prosecution offered into evidence various items recovered from Petitioner's car and apartment including:  a semiautomatic hand gun, a shotgun, bullets, gun magazines, various license plates including paper dealer plates and a stolen metal plate, hand cuffs, mace, a stun gun, a bail enforcement officer's badge,  a ski mask, sunglasses with the inside blacked out with tape or paint, flex restraints, nylon rope, a rubber glove, super glue, duct tape, two objects resembling explosive devices, a marijuana bong, a marijuana plant, assorted knives, documents explaining how to immobilize cattle, and a receipt for a screenplay written by Petitioner entitled "Your Money or Your Life."  3 SF 60-88.  Petitioner argues that counsel was ineffective for failing to object to the admission of these objects, as the prosecution did not prove beyond a reasonable doubt that these objects were used to commit other crimes.

Upon habeas review the trial court found that Hunt's performance in not objecting to the admission of the items was not deficient.  Specifically it stated:

> Applicant's possession of those items, as criminal instruments, was relevant to his punishment under article 37.07 of the Texas Code of Criminal Procedure. Additionally, Hunt's strategy was to explain away applicant's possession of the items

as evidence of applicant's wild imagination and vicarious interest in spying and criminal activity, rather than attempting to prevent the jury from learning about the existence of the items by contesting the admissibility of the items.  Hunt has stated a reasonable strategy for not objecting.

*Ex parte Remerowski,* Appl. No. 62,255-01 at 63.

After reviewing the transcript of the trial, Hunt's claim that his strategy was to paint Petitioner as a wildly imaginative criminal enthusiast, rather than a criminal, is evident from the record.  In addition, Petitioner admitted at trial that he used drugs and tried to link his alcohol and drug use to his bipolar disorder.

As mentioned above, the scope of punishment evidence is broad under Texas law, and any objection to the admissibility of the evidence would most likely have been overruled.  *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999).  Petitioner has failed to show that, upon habeas review, the state court improperly applied the *Strickland* standard or its decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**11.     Prejudice**

Finally, Petitioner has failed to demonstrate that he was prejudiced as a result of counsel's alleged deficiencies.  In order to prove prejudice, Petitioner must establish a reasonable probability that but for his counsel's deficient performance, he would have received a "significantly less harsh" sentence.  *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993).  The Fifth Circuit stated "[w]e have observed that this standard reflects our concern of allowing review of sentences imposed by state courts possessing a 'wide range of sentencing discretion' while avoiding an 'automatic rule of reversal.'" *Ward v. Dretke*, 420 F.3d 479,498 (5th Cir. 2005) (citing *United States v. Reinhart*, 357 F.3d 521, 531 (5th Cir. 2004) and *United States v. Phillips*, 210 F.3d 345, 351 (5th Cir. 2000)).

When applying this standard, the Court "must consider such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances." *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994) (citing *Spriggs*, 993 F.2d at 88).  In this case, Petitioner's 50 year sentence fell short of a maximum life sentence.  The evidence presented at punishment was that Petitioner held up a young family at gunpoint after devising an elaborate plot involving the sale of a car, so that he could rob them of a large sum of cash.

The Court's task under the AEDPA is that of determining whether the state habeas court's application of the law to the facts was reasonable.  Importantly, in order to grant habeas relief from a state conviction following rejection of the petitioner's state habeas application, the Court  must conclude that the state habeas court's application of federal law was not only incorrect, but "objectively unreasonable." *Ward v. Dretke*, 420 F.3d 479,499 (5th Cir. 2005).

With respect to prejudice, the state habeas court held that "applicant has failed to demonstrate that any such deficiency prejudiced him.  The jury's punishment verdict in this case was based upon relevant and admissible evidence showing the details of applicant's crime of aggravated robbery and other extraneous crimes and bad acts committed by applicant over the course of his life." *Ex parte Remerowski*, Appl. No. 62,255-01 at 63.  Given the seriousness of the offense to which Petitioner pleaded guilty, the Court cannot say that the trial court's findings and conclusions constituted an objectively unreasonable application of federal law to the facts of this case.  Therefore, the Court should not disturb the state habeas court's determination that Petitioner was not prejudiced.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 31st day of July, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE